# UNITED STATES DISTRICT COURT

_____ DISTRICT OF____MASSACHUSETTS_____

UNITED STATES OF AMERICA

V.

**RUDOLPH HARDIAL**

**CRIMINAL COMPLAINT**

CASE NUMBER: MJ04-MJ-245 JLA

(Name and Address of Defendants)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **November 5, 2004** in **Suffolk** county, in the District of **Massachusetts,** defendant did, (Track Statutory Language of Offense)

knowingly, intentionally and unlawfully import into the United States from a place outside thereof, namely Jamaica, a quantity of cocaine, a scheduled II controlled substance,

in violation of Title ___21___ United States Code, Section(s) ___952___.

I further state that I am a(n) **U.S. ICE Special Agent** and that this complaint is based on the following facts:
                                   Official Title

See Attached Affidavit
Of SA G. Ryan Arnold

Continued on the attached sheet and made a part hereof:  X  Yes   ☐  No

Signature of Complainant
**G. RYAN ARNOLD**
Special Agent
U.S. ICE

Sworn to before me and subscribed in my presence,

November 8, 2004                     at         Boston, Massachusetts
Date                                              City and State

Name and Title of Judicial Officer               Signature of Judicial Officer
**JOYCE LONDON ALEXANDER**
**UNITED STATES MAGISTRATE JUDGE**

## AFFIDAVIT OF SPECIAL AGENT G. RYAN ARNOLD

I, Special Agent G. Ryan Arnold, deposes and states as follows:

1. I am a Special Agent with the United States Immigration and Customs Enforcement (ICE). I have been so employed with ICE and its predecessor agency the Immigration and Naturalization Service Customs (INS) since 2002. Prior to that, I served as a Border Patrol Agent in Zapata, Texas from 1998 to 2002. Since joining federal law enforcement in 1998, I have been involved in multiple drug related investigations involving the illegal smuggling of cocaine, heroin, and other controlled substances. I have also received training at the Federal Law Enforcement Training Center in all aspects of drug smuggling, including the structure, organization, and operation of international drug smuggling groups, the techniques used by such persons to finance and import drugs, and the identification of documents and other records commonly generated by such operations.

2. I submit this affidavit in support of a criminal complaint charging **RUDOLPH HARDIAL (HARDIAL)** with the illegal importation into the Customs' territory of the United States from a place outside thereof, namely Jamaica, a quantity of cocaine, a class II controlled substance, in violation of 21 U.S.C. §952.

3. The information contained in this affidavit is based upon facts and circumstances that I am personally familiar with, and as related to me by other law enforcement officers familiar

2

with the facts of this investigation.  This affidavit does not set forth all the facts developed during the course of this investigation.  Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that **HARDIAL** has committed the crime set forth in the accompanying Criminal Complaint.

**Air Jamaica, Flight 49**

4.  On Friday night, November 5, 2004, Air Jamaica Flight No. 49 arrived from Montego Bay, Jamaica at Logan International Airport in Boston at approximately 10:30 P.M.  HARDIAL, traveling under a Jamaican Passport, was a passenger on that flight and exited the flight in the company of his wife, Deloris Hardial, along with the other passengers at Terminal E.

5.  During the Customs and Border Protection (CBP) examination process carried out routinely by CBP Inspectors of the Flight No. 49's passengers, HARDIAL and his wife, Deloris Hardial, were selected by CBP Inspectors for examination and questioned briefly by two CBP Inspectors - CBP Inspector Iannaccone and Campfield.[1]  During the interview of HARDIAL,

---

[1] Prior to his arrival in Boston, HARDIAL had been previously identified by CBP Passenger Analysis Unit from the Air Jamaica Flight 49 manifest based on the following travel history.  As such, a travel "look out" was placed on HARDIAL should he actually board Flight 49 in Jamaica and fly to Boston, MA.  **1)** U.S. Customs data had confirmed that HARDIAL made multiple trips between Jamaica and the United States between January 24, 2000 and November 5, 2004; **2)** each of HARDIAL's trips to the states were short, generally between one (1) and three (3) days in length; **and 3)** HARDIAL's ticket for this particular trip had been purchased using cash shortly before his November 5, 2004 travel date.  Based on my experience, these kinds of

3

Inspector Iannaccone noticed that HARDIAL appeared calm, but was chewing hard on gum and that he often looked down or away from the Inspectors when answering questions put to him. Likewise, HARDIAL attempted to answer all questions that the Inspectors posed to his wife, Deloris Hardial.

**Conflicting stories**

6. At this point, Inspectors separated HARDIAL and his wife and continued to question HARDIAL further. When asked by Inspectors what his ultimate destination was, and with whom HARDIAL and his wife were going to stay with in the Boston area, HARDIAL could not provide a clear answer. In fact, HARDIAL kept changing his story, offering one explanation and then another.[2] In addition, HARDIAL appeared to Inspectors to grow increasingly nervous as the questioning continued, at times even repeating the questions put to him by the Inspectors.

7. As the questioning continued into the early morning hours of November 6, 2004, Inspectors observed that Deloris

---

travel schedules/ arrangements are consistent with possible drug smuggling activity.

[2] For example, at first HARDIAL stated that he and his wife were staying at 923 Blue Hill Avenue in Boston; an address HARDIAL claimed that he had stayed at when visiting Boston on previous trips. However, when Deloris Hardial was questioned about their travel plans, she indicated that they both were staying at a Holiday Inn Express somewhere in Boston. When HARDIAL was asked exactly with whom he and his wife were staying with at Blue Hill Avenue, HARDIAL replied, initially, that they were staying with his "uncle," then, later, HARDIAL stated they were staying with a "cousin" whom HARDIAL expected would be coming to pick them up at Logan Airport. After more questioning by Inspectors, HARDIAL stated that some unidentified male would be picking he and his wife up at the airport, and, a short time after that, HARDIAL remarked that he and his wife had planned to take a taxi to their destination.

4

Hardial was burping/belching frequently, she appeared to have a dry mouth, and was growing increasingly nervous the longer she and her husband were being questioned by Inspectors. Suspicious that, perhaps, Deloris Hardial was carrying drugs internally and that, together, HARDIAL and his wife were conspiring to smuggle drugs into the country from Jamaica, Inspector Campfield asked HARDIAL and his wife to sign a consent form agreeing to submit to an x-ray of their abdomens. In response, HARDIAL joked about the request and stated that on a previous trip to Miami, FL, he had been asked to sign a similar form, but that the inspectors in Florida never bothered to take him for an x-ray.[3]

**Consent to x-ray**

8.   Later, at 2:15 A.M. on November 6, 2004, HARDIAL and his spouse consented to undergoing an x-ray. Thereafter, both individuals were promptly transported to the Whidden Memorial Hospital in Everett, MA to undergo the aforementioned x-ray procedures. Some time after HARDIAL's arrival at the Whidden Hospital, at approximately 3:30 A.M., while waiting to undergo an abdominal x-ray, HARDIAL admitted to the attending physician that he had, in fact, ingested illegal drugs. At approximately 4:23 A.M., x-rays confirmed that HARDIAL had, in fact, ingested

---

[3] ICE data systems confirmed that HARDIAL and his wife had entered Miami, FL on February 24, 2004 and had undergone a "secondary" inspection similar to the inspection that HARDIAL and his wife were undergoing with Inspectors Iannaccone and Campfield the night of November 5, 2004 in Boston, MA.

5

multiple foreign substances.  An x-ray of Deloris Hardial indicated **no** foreign substances in her system.

**Cocaine discovered inside pellets**

9.   Approximately thirty minutes later, HARDIAL "passed" through his digestive system ten (10) pellet-shaped items that were retrieved by agents accompanying HARDIAL to the hospital.  A white powdery substance was discovered contained inside the aforementioned pellets and a preliminary chemical field test conducted on several of these pellets confirmed the presence of cocaine.

**HARDIAL's statements**

10.   After discovery of cocaine in HARDIAL's system, HARDIAL was read his rights under Miranda.  HARDIAL indicated that he understood his rights, executed a written waiver of these rights, and agreed to answer questions put to him by the Affiant.  HARDIAL related that he had purchased roughly a kilogram of cocaine in Jamaica for $400,000 (Jamaican $$) from someone named "Danny" who worked at a Jamaican horse race track. (HARDIAL, himself, is a horse trainer living and working in Jamaica.) HARDIAL began ingesting the pellets beginning at 7:00 A.M. on November 5, 2004, and believed that he swallowed between 147 and 149 pellets before departing for Boston by plane.  Upon arrival in Boston, HARDIAL's plan was to meet some unknown individual at Suffolk Downs racetrack and sell the cocaine to this individual.

6

HARDIAL further related that Deloris Hardial, his wife, had no knowledge that he had ingested cocaine for re-sale in Boston, MA and was not involved in his criminal wrong doing.

11. Based on the information contained in this Affidavit, all of which are true and accurate to the best of my knowledge, information and belief, I believe that there is probable cause to believe that **RUDOLPH HARDIAL** has committed a violation of 21 U.S.C. §952, the illegal importation of cocaine, a class II controlled substance, into the United States from a place outside thereof, namely Jamaica.

**G. RYAN ARNOLD**
Special Agent
U.S. Immigration and Customs Enforcement

Sworn to and subscribed before me this 8th day of November 2004.

**JOYCE LONDON ALEXANDER**
United States Magistrate Judge

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |
|---|---|

Place of Offense: D MA    Category No. II    Investigating Agency  ICE

City  Boston

County  Suffolk

**Related Case Information:**

Superseding Ind./ Inf. _____  Case No. _____
Same Defendant _____  New Defendant  x
Magistrate Judge Case Number  M-04-
Search Warrant Case Number
R 20/R 40 from District of

**Defendant Information:**

Defendant Name  Rudolph Hardial        Juvenile:  ☐ Yes   x No

Alias Name

Address  60 Weedom Street, Newland District, Bridgeport, Jamaica

Birthdate: 8/25/60   SS # _____  Sex: Male   Race: African descent   Nationalit  Jamaican

**Defense Counsel if known:**   Martin Richey, Esq.   Address  Federal Defenders Office

Bar Number _____         617 223-8060

**U.S. Attorney Information:**

AUSA  Robert Peabody         Bar Number if applicable  551936

Interpreter:    Yes   X No    List language and/or dialect:

**Matter to be SEALED:**   ☐ Yes   X No

☐ Warrant Requested        Regular Process        X In Custody

**Location Status:**

Arrest Date   November 8, 2004

X  Already in Federal Custody as of   November 6, 2004   in _____ .
☐ Already in State Custody at _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by: _____ on _____

**Charging Document:**   X Complaint   ☐ Information   Indictment

**Total # of Counts:**   ☐ Petty ____   ☐ Misdemeanor ____   x Felony  1

Continue on Page 2 for Entry of U.S.C. Citations

X    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:  11/8/04         Signature of AUSA:  *[signature]*

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**   Rudolph Hardial

**U.S.C. Citations**

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1   21 USC 952 | illegal importation of cocaine | |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:** _____

js45 Merc.wpd - 2/7/02